FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No.    20-mj-04127 McAliley

UNITED STATES OF AMERICA

vs.

JOSHUA MANLEY WILLIAMS,
      a/k/a "Marcus Limark Rivers",
      a/k/a "Kevin",
PERNELL ADOLPHUS TOWERS JR., and
SHELDON HYLTON,

        Defendants.

_____/

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? _ Yes  X No

2.    Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? _ Yes  X No

3.    Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? _ Yes  X No

[Remainder of Page Intentionally Left Blank]

1

**FILED UNDER SEAL**

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

Joshua Paster
Assistant United States Attorney
U.S. Attorney's Office
99 NE 4th Street
Court ID No. A5502616
Miami, Florida 33132-2111
Telephone: (305) 961-9342
Facsimile: (305) 536-4089
Email: Joshua.Paster@usdoj.gov

2

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| JOSHUA MANLEY WILLIAMS, a/k/a "Marcus Limark Rivers," a/k/a "Kevin"; PERNELL ADOLPHUS TOWERS JR.; and SHELDON HYLTON | ) ) ) ) |
| *Defendant(s)* | ) |

Case No.   20-mj-04127 McAliley

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 14, 2020 _____ in the county of _____ Miami-Dade _____ in the

____ Southern ____ District of ____ Florida ____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Attempted possession of a controlled substance with intent to distribute (Against Williams, Towers Jr., and Hylton) |
| 21 U.S.C. § 846 | Conspiracy to possess a controlled substance with intent to distribute (Against Williams, Towers Jr., and Hylton) |
| 8 U.S.C. §§ 1326(a) and (b)(1) | Illegal Entry by Deported Alien (Against Williams) |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

TFO Rolando Rios, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Face Time _____ (specify reliable electronic means).

Date:    12/04/2020

_____
*Judge's signature*

City and state:    Miami, Florida

U.S. Magistrate Judge Chris M. McAliley
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Rolando Rios (the "Affiant"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.     I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), and have served with the DEA since 2008.  I also am a Sergeant with the Hialeah Police Department and I have served in that capacity for over twenty years. My duties involve investigating narcotics related offenses, and I have conducted hundreds of undercover drug purchases, controlled buys, and bulk money pickups and drops that involve money laundering. I also received training from the DEA, HIDTA, and various state and federal agencies that specialize in narcotic investigative matters.

2.     This Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging JOSHUA MANLEY WILLIAMS, a/k/a "Marcus Limark Rivers," a/k/a "Kevin" ("WILLIAMS"), PERNELL ADOLPHUS TOWERS JR. ("TOWERS"), and SHELDON HYLTON ("HYLTON") on or about July 14, 2020, with one (1) count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of Title 21 United States Code, Section 846; and on or about July 14, 2020, with one (1) count of attempted possession with intent to distribute 500 grams or more of cocaine, in violation of Title 21 United States Code, Section 846.

3.     This Affidavit also is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging WILLIAMS on or about July 14, 2020, with one (1) count of entry of deported, removed, or excluded aliens, in violation of Title 8 United States Code, Section 1326(a) and (b)(1).

1

4.     I make this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, other Special Agents of the DEA, Task Force Officers, Immigration and Customs Enforcement, Enforcement and Removal (ICE/ERO) Officers, other members of the Hialeah Police Department, and other Law Enforcement Officers of other investigative agencies, as well as my review of records and other evidence obtained during the course of this investigation. I have not included in this Affidavit each and every fact known to me. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint for the above-described criminal violations.

## PROBABLE CAUSE

5.     This case involves a reverse-sting operation conducted by the Hialeah Police Department. As explained in more detail below, on July 14, 2020, WILLIAMS, TOWERS, and HYLTON were arrested while negotiating and purchasing two kilograms of cocaine from a registered confidential source (CS) and a Hialeah Police undercover Detective (UC). Law enforcement seized $27, 970 in U.S. currency from the defendants during the purchase. Continuing on July 14, 2020, immigration officials received an immigration alien query notification that WILLIAMS was arrested at a state facility in Miami, Florida. Immigration officials later confirmed that WILLIAMS previously was deported from the United States and had illegally reentered.

### I.    Drug Transaction

6.     On July 3, 2020, the CS received a telephone call from an associate ("Associate 1"). Associate 1 was acting as a broker for a cocaine transaction, believed the CS was a source of supply of cocaine in the South Florida area, and told the CS that he had people who were interested in purchasing kilograms of cocaine. Associate 1 and the CS negotiated the sale of kilograms of cocaine at a price of $28,000 per kilogram. Associate 1 told the CS that the buyer would call soon.

2

7.       Continuing on July 3, 2020, in a recorded phone conversation, Associate 2 called the CS to discuss the purchase of kilograms of cocaine. Over the course of several days, Associate 2 and CS engaged in multiple, recorded phone conversations regarding the purchase of cocaine and the logistics of the transaction. During these conversations, Associate 2 assured the CS that Associate 2's associates would contact CS for the purchase multiple kilograms of cocaine. Prior to purchasing the cocaine, however, Associate 2 wanted CS to provide a "picture" of the cocaine to take back to his people. Through my training and experience, I know that the reference to "picture" is a term that relates to a sample of cocaine that demonstrates the quality. Traffickers often ask for a sample of cocaine to show their co-conspirators the quality of the cocaine that they will be purchasing.

8.       On July 9, 2020, in a recorded phone conversation, Associate 2 told the CS that his family member named "Kevin" would contact CS in relation to the drug transaction. Later that day, an individual believed to be WILLIAMS texted the CS and identified himself as "Kevin." WILLIAMS and the CS exchanged several recorded phone calls and text messages that day, all in furtherance of logistics and payment for the drug transaction.

9.       On July 13, 2020, WILLIAMS and the CS arranged to meet at a restaurant in the City of Hialeah, in the Southern District of Florida, to complete the drug transaction. WILLIAMS drove to the restaurant as agreed and met with the CS and the UC. During the meeting, WILLIAMS told the UC that his buyers wanted to start with two kilograms of cocaine before purchasing more. The UC gave WILLIAMS a sample of genuine cocaine from the Hialeah Police Special Investigations Section sting inventory. WILLIAMS asked the UC if the sample was in the ninety's. I know based on training and experience that WILLIAMS'S question was a reference to the quality

3

of cocaine. WILLIAMS further confirmed that he would pay $28,000 per kilogram and that the parties could complete the transaction the following day.

10.    On July 14, 2020, WILLIAMS called the CS to confirm that he and his associates were ready to complete the transaction. The CS texted WILLIAMS a meet location and time, which WILLIAMS acknowledged in response.

11.    Continuing on July 14, 2020, Detectives of the Hialeah Police Department observed and recorded WILLIAMS arrive at the meet location within the City of Hialeah, Miami-Dade County, Florida, driving a 2020 Nissan Altima followed by a 2016 Honda Accord. The driver of the Honda Accord later was identified as TOWERS. The passenger of the Honda Accord later was identified as HYLTON.

12.    The CS met with all three defendants and asked to see the money that they brought to purchase the two kilograms of cocaine. TOWERS, HYLTON, and the CS walked over to the Honda Accord. HYLTON opened the driver door and sat inside while TOWERS opened the passenger door and stood by the vehicle. HYLTON showed the CS a blue zipper bag containing several bundles of U.S currency wrapped in rubber bands. The CS then told all three males to follow him/her and the UC to an undisclosed location in the City of Hialeah.

13.    Once at the undisclosed location, WILLIAMS and TOWERS exited their vehicles while HYLTON remained in the driver's seat of the Honda Accord with the blue zipper bag containing the money. The UC asked both WILLIAMS and TOWERS to bring down the money, but they responded that they wanted to see the narcotics first.

14.    Once inside the undisclosed location, the UC asked WILLIAMS and TOWERS how many kilograms they wanted to purchase. WILLIAMS stated that they brought the money to purchase two kilograms of cocaine. The UC then placed a previously opened kilogram of cocaine

4

wrapped in black tape sealed in a clear heat-sealed bag on top of the table and two kilograms of cocaine. The UC told WILLIAMS that the sample of cocaine he had given him the day before came from the same kilogram of cocaine he was showing him. WILLIAMS reached into his crotch and took out the same sample that the UC had given him and placed it on the table. TOWERS grabbed and began to inspect the open kilogram of cocaine. TOWERS asked the UC for a knife so he could cut into the kilogram of cocaine to inspected further. Moments later, the transaction was completed and WILLIAMS and TOWERS were taken into custody by law-enforcement officers of the Hialeah Police Department. HYLTON was taken into custody while he was sitting inside the Honda Accord. A search of the Honda Accord pursuant to a state search warrant revealed a blue zipper bag with a total of $ 27,970 in U.S. currency.

15.     Post-*Miranda*, none of the defendants made any statements.

16.     Approximately 490 grams of cocaine from the Hialeah Police Special Investigations Section sting inventory was impounded for this investigation. The substance field tested positive for cocaine. This cocaine was submitted to the Miami-Dade Police Laboratory for further analysis.

**II.     Entry of Deported, Removed, or Excluded Aliens**

17.     On or about June 7, 2006, WILLIAMS was admitted into the United States as a temporary worker performing other services (H2B) with authorization to remain in the United States for a temporary period of six months or December 1, 2006. WILLIAMS failed to depart as required, violating his nonimmigrant status.

18.     In a Judgment on or about January 13, 2010, an Arizona state judge sentenced WILLIAMS to one year and two months imprisonment for felony solicitation to possess marijuana for sale.

19.     On or about January 19, 2010, WILLIAMS was encountered by ICE/ERO Officers in conjunction with the Arizona Department of Corrections in Phoenix, Arizona.

20.     On or about January 19, 2010, WILLIAMS was served with a Notice to Appear (NTA) and placed in removal proceedings pursuant to sections 237(a)(1)(B) (Non-Immigrant Overstay) and 237(a)(2)(B)(i) (Drug Conviction) of the Immigration and Nationality Act.

21.     On or about April 22, 2011, an Immigration Judge in Eloy, Arizona, granted voluntary departure from the United States.

22.     On or about May 18, 2011, WILLIAMS voluntary departed the United States to Jamaica. WILLIAMS'S voluntary departure was documented in an executed Voluntary Departure and Verification of Departure form. The Voluntary Departure and Verification of Departure form reflects the defendant's name, fingerprint, signature and picture and was signed by an Immigration Official who witnessed the departure.

23.     On or about August 5, 2011, WILLIAMS was encountered by US Customs and Border Protections Marine Interdiction Agents and Homeland Security Investigations Special Agents in Key Largo, Florida. WILLIAMS was on board a U.S vessel with 16 bales of Marijuana.

24.     On or about August 31, 2011, WILLIAMS was served with an NTA and placed in removal proceedings pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act.

25.     On or about February 3, 2012, WILLIAMS was ordered removed from the United States to Jamaica by an Immigration Judge on the charges contained in the NTA dated August 31, 2011.

26.     On or about March 14, 2012, WILLIAMS was removed from the United States to Jamaica. WILLIAMS'S removal was documented in an executed Warrant of Removal/Deportation. The Warrant of Removal/Deportation reflects the defendant's name,

fingerprint, signature and picture and was signed by an Immigration Official who witnessed the defendant being physically deported from the United States. WILLIAMS was warned of the penalties for re-entry into the United States.

27.     On or about July 14, 2020, ICE/ERO Officers in Miami, Florida received a positive biometric fingerprint match for WILLIAMS from the Miami-Dade County Corrections Department alerting that WILLIAMS had been arrested in Miami-Dade County, Florida.

28.     WILLIAMS had been arrested on July 14, 2020, under the name "Marcus Rivers" because, at the time of his arrest, WILLIAMS identified himself as "Marcus Rivers." Additionally, WILLIAMS was in possession of a Nevada driver's license with WILLIAMS'S picture under the name of "Marcus Limark Rivers."

29.     A fingerprint comparison revealed that the person arrested in Miami-Dade County, in the Southern District of Florida, on or about July 14, 2020, and booked under the name "Marcus Rivers" was the same person who was fingerprinted by Immigration officials on or about March 14, 2012, and that his true name was JOSHUA MANLEY WILLIAMS.

30.     A review of WILLIAMS'S A-file shows that WILLIAMS never applied for or received authorization from the Attorney General of the United States or his successor, the Secretary of Homeland Security, to reapply for admission to the United States.

## CONCLUSION

31.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about July 14, 2020, in Miami-Dade County, in the Southern District of Florida, the defendants, WILLIAMS, TOWERS, and HYLTON, attempted to possess with intent to distribute 500 grams or more of cocaine.

7

32.    I further submit that there is probable cause to believe that, on or about July 14, 2020, in Miami-Dade County, in the Southern District of Florida, WILLIAMS, TOWERS, and HYLTON conspired with each other and others to possess with intent to distribute 500 grams or more of cocaine.

33.    I further submit that there is probable cause to believe that, on or about July 14, 2020, in Miami-Dade County, in the Southern District of Florida, the defendant, WILLIAMS, an alien, having previously been deported and removed from the United States, and subsequent to a conviction for commission of a felony, was found to be in the United States, knowingly and unlawfully, without the Attorney General of the United States or his successor, the Secretary of Homeland Security (Title 6, United States Code, Sections 202(3), 202(4) and 557), having expressly consented to such alien's reapplying for admission to the United States, in violation of Title 8, United States Code, Section 1326(a) and (b)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
SGT. ROLANDO RIOS, TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION


Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by Facetime this ___4th___ of December 2020


_____
HONORABLE CHRIS M. MCALILEY
UNITED STATES MAGISTRATE JUDGE